FILED
2012 Feb-07  AM 08:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| MERCEDES-BENZ U.S. INTERNATIONAL, INC., )<br><br>Petitioner, )<br><br>vs. )<br><br>COREA AUTOPARTS PRODUCING CORPORATION, )<br><br>Respondent. ) | Case No. MC-11-S-4130-W |

## MEMORANDUM OPINION AND ORDER

This case is before the court on a motion to quash and for a protective order by petitioner Mercedes-Benz U.S. International, Inc. ("Mercedes").[1] Respondent, Corea Autoparts Producing Corporation ("Corea"), is the defendant in a separate case filed in the Eastern District of Michigan, *Robert Bosch, LLC v. Corea Autoparts Producing Corporation*, Civil Action No. 2:11-cv-14019-JAC-MAR. Corea served Mercedes with a subpoena issued by this court commanding a corporate representative of Mercedes to appear for a deposition in the action pending in the Eastern District of Michigan. Mercedes now seeks an order quashing that subpoena.

### I. FACTUAL BACKGROUND

In the underlying lawsuit filed in the Eastern District of Michigan, Robert

---

[1] Doc. no. 1 (Motion to Quash).

Bosch, LLC ("Bosch"), sued Corea for alleged infringement of nine patents issued for inventions used in automobile windshield wiper blades.[2]  In defense, Corea asserts that the patents are invalid because they allegedly are based on prior art windshield wiper blades which Bosch sold to Daimler AG, the parent corporation of Mercedes, and which were then installed on Mercedes vehicles used, offered for sale, or sold in the United States.[3]  This defense is based on 35 U.S.C. § 102(a), pursuant to which a patent is invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(a).  To establish this defense, Corea must show that the wiper blades were in public use or sale in the United States by nine different dates — a date one year prior to the date of the application for each of the nine patents at issue in the Eastern District of Michigan litigation.[4]  Of the nine patents at issue, the most recent patent application was made on November 16, 2001.[5]

Corea sought documents relevant to the invalidity defense from Bosch through

_____

[2] *See* doc. no. 2 (Brief in Support of Motion to Quash) 2; doc. no. 4 (Brief in Opposition to Motion to Quash) 1.

[3] Brief in Opposition to Motion to Quash 3; doc. no. 4-1 (Answer) 9-10.

[4] Brief in Opposition to Motion to Quash 3.

[5] *Id.*

2

discovery in the underlying case.[6]  However, because over ten years have passed since the relevant dates on which Bosch allegedly sold the wiper blades to Daimler AG, Bosch was not able to produce many responsive documents.[7]

While Mercedes is not a party to the Michigan case, Corea subsequently sought to obtain information concerning the sale of Bosch windshield wiper blades from Mercedes.  Corea served Mercedes with three subpoenas commanding Mercedes to produce documents or provide deposition testimony.[8]  The first subpoena requested documents relevant to the patent invalidity defense.[9]  Mercedes produced responsive documents in its possession, but refused to produce responsive documents possessed by its parent corporation, Daimler AG.[10]  The second subpoena commanded Mercedes to produce a corporate representative to be deposed, but was eventually withdrawn.[11]

The third subpoena, the one at issue here, also commands Mercedes to produce a corporate representative to be deposed.[12]  Corea asserts that it needs to depose a

---

[6] *See* doc. no. 4-3 (First Request for Production of Documents to Bosch) 10-12; doc. no. 4-4 (Third Request for Production of Documents to Bosch) 10-11; doc. no. 4-5 (Fourth Request for Production of Documents to Bosch) 9-11.

[7] Brief in Opposition to Motion to Quash 3.

[8] Brief in Support of Motion to Quash 2; Brief in Opposition to Motion to Quash 1.

[9] *See* Brief in Opposition to Motion to Quash 3; doc. no. 1-3 (Objections and Responses to the First Subpoena).

[10] Brief in Support of Motion to Quash 2; Brief in Opposition to Motion to Quash 1.

[11] Brief in Support of Motion to Quash 2; Brief in Opposition to Motion to Quash 1.

[12] *See* doc. no. 1-1 (Third Subpoena).

Mercedes corporate representative in order to: "(1) determine non-documented facts within the knowledge of [Mercedes], and (2) establish grounds for compelling [Mercedes] to obtain and produce responsive documents from Daimler AG."[13] Appended to the subpoena is a "Schedule of Deposition Topics," a definitions section, and a list of deposition topics: *i.e.*,

1.     The ownership of [Mercedes].

2.     The general corporate structure of [Mercedes].

3.     The relationship between [Mercedes] and Daimler AG, including, without limitation, the responsibilities and obligations of each and the information and materials exchanged between them.

4.     The directors, officers, and employees of [Mercedes] and their relationship with Daimler AG and the directors, officers, and employees of Daimler AG.

5.     The financial relationship between [Mercedes] and Daimler AG, including, without limitation, their exchange of funds and banking relationship.

6.     The exchange or sharing of information, documents, and things in the ordinary course of business or otherwise between [Mercedes] and Daimler AG.

7.     Beam Wiper Blades[14] that were supplied, made, used, displayed,

---

[13] Brief in Opposition to Motion to Quash 1 (bracketed alterations supplied).

[14] The patents at issue in the underlying litigation are inventions used in so-called "Beam Wiper Blades." *See, e.g.*, doc. no. 4-2 (Patent No. 7,293,321). "Beam Wiper Blades" feature a single connection between the wiper blade and the wiper arm, whereas conventional wiper blades connect to the wiper arm through two series of brackets. *See* Subpoena 1-2 (defining "Conventional Wiper Blades" and "Beam Wiper Blades" and presenting illustrations of each type).

disclosed, sold, offered for sale, and/or imported to, by, and/or for You by or from Bosch before November 16, 2000. This includes without limitation (1) any prototype or commercial versions of the Bosch Aerotwin or Bosch Variflex wiper blades, including the Aerotwin wiper blades first introduced on the Mercedes Benz CL and S class vehicles in the late 1990s, (2) any Bosch wiper blades having the following Model Nos.: . . ., and (3) the wiper blades used on the following project numbers: . . .

8.    The first importation into the United States of the model year 1999, 2000, and/or 2001 Mercedes Benz CL and S class vehicles.

9.    Any and all displays in the United States before November 16, 2000 of the model year 1999, 2000, and/or 2001 Mercedes Benz CL and S class vehicles, including without limitation any display at, [sic] any trade or auto shows in the United States (*e.g.*, the 1999 Detroit and New York Auto Shows).

10.   Any and all uses in the United States before November 16, 2000 of the model year 1999, 2000, and/or 2001 Mercedes Benz CL and S class vehicles, including without limitation any use or display at a DaimlerChrysler facility in the United States, such as the Arizona proving grounds or the Auburn Hills headquarters in the United States.

11.   Conception, development, design, dimensions, properties, operation, testing, or sampling of any and all Beam Wiper Blades known, supplied, made, used, displayed, disclosed, sold, offered for sale, and/or imported to, by, and/or for You before November 16, 2000.

12.   Any and all Beam Wiper Blades supplied, made, used, displayed, described in a printed publication, sold, offered for sale, and/or imported to, by, and/or for any persons or entity other than You before November 16, 2000.

13.   The VINS of every model year 2000 Mercedes Benz CL and S

class vehicle present in the United States prior to May 5, 1999.

14.    The following engineering drawings of Beam Wiper Blades,
       Y391A01353-364, . . .

15.    Communications prior to November 16, 2000 which refer or
       relate to Beam Wiper Blades and which were between You (such
       as, without limitation, Your following employees:   Dr.
       Ernstberger, Prof. Guntram Huber, H. Berger, Wolfgang Lerke,
       Herman Gaus, Knothe, Multhaupl, Eckert, Ott, Schulze and/or
       Kobetz) and Bosch (such as, without limitation the following
       Bosch employees:  Thomas Kotlarski, Peter DeBlock, Manfred
       Wilhelm, Julius Mazurkiewicz, Peter Wijnants, Frans Breesch,
       and/or Wilfried Merkel).[15]

## II. DISCUSSION

Federal Rule of Civil Procedure 45 provides that, by satisfying the

requirements and procedures set forth therein, a party may serve a subpoena

commanding a non-party to produce documents or appear as a witness.  *See* Fed. R.

Civ. P. 45.  In addition, the discovery rules "create integrated procedural devices"

and, thus, subpoenas are also subject to the general procedures and limitations

provided in the other discovery rules, to the extent those rules do not conflict with

Rule 45.  *Hickman v. Taylor*, 329 U.S. 495, 505 (1947) ("It matters little at this late

stage whether Mr. Fortenbaugh fails to answer interrogatories filed under Rule 26 or

under Rule 33 or whether he refuses to produce the memoranda and statements

---

[15] Subpoena 3-5 (ellipses and bracketed alterations supplied).

pursuant to a subpoena under Rule 45 or a court order under Rule 34.   The deposition-discovery rules create integrated procedural devices."); *see also* 9A Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 2452 (3d ed. 2008).   Specifically, the permissible scope of a subpoena is congruent with the scope permitted for other discovery devices under the discovery rules.   *See, e.g.*, *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003); *see also* 9A *Federal Practice and Procedure* § 2459 ("This [Rule 26(b)] discovery relevancy standard has been applied to subpoenas in many cases.") (citing cases).

## A.   Relevance

Mercedes first objects to the deposition topics on the grounds that they are not relevant and, thus, are outside the permissible scope of discovery.[16]   Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense," and further provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1) (bracketed alteration supplied).

---

[16] Brief in Opposition to Motion to Quash 4-6.

1.      **Information concerning the relationship between Mercedes and Daimler AG (deposition topics "1" through "6")**

Deposition topics "1" through "6" request information about the relationship between Mercedes and Daimler AG, specifically the ownership of Mercedes; the corporate structure of Mercedes; the interactions among the directors, officers, and employees of the two corporations; their financial relationship; and the exchange of documents and other information between them.[17]  Mercedes objects to these topics on the grounds that they are not "related to . . . the claims and defenses [of Corea] in the underlying patent infringement case," and that they are thus outside the scope of discovery.[18]

When Corea issued its first subpoena to Mercedes, it directed Mercedes to request responsive documents from Daimler AG, the parent corporation of Mercedes, but Mercedes refused to comply.[19]  However, as discussed above, the scope of subpoenas are subject to the limitations on scope provided in the discovery rules and, thus, under Rule 34(a)(1), a party may discover any documents or things that are in the "possession, custody, or control" of the responding person or entity.

Corea believes that responsive documents possessed by Daimler AG are within

---

[17] Subpoena 3-4.

[18] Brief in Support of Motion to Quash 5.

[19] *See* Brief in Opposition to Motion to Quash 9; doc. no. 4-6 (Correspondence between counsel); doc. no. 1-3 (Objections and Responses of Mercedes to the First Subpoena) 1.

the control of Mercedes and, thus, that the first subpoena required Mercedes to obtain responsive documents from Daimler AG.[20]  On that basis, Corea now seeks to depose a corporate representative of Mercedes on topics relating to the relationship between Mercedes and Daimler AG in order to obtain the information necessary to compel Mercedes to request responsive documents from Daimler AG.

"Control" is defined for discovery purposes "not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).  One situation in which an entity may not possess responsive documents but may still have control over them is when a subsidiary corporation has control of documents possessed by the parent corporation.  *See* 8B *Federal Practice and Procedure* § 2210.  To determine whether a subsidiary corporation has control over documents possessed by its parent corporation, courts have generally looked to "whether the 'alter ego' doctrine would justify piercing the corporate veil, whether the litigant corporation acted as the agent of the nonparty corporation in connection with the matter in litigation, whether the litigant corporation could secure materials from the nonparty corporation to meet its own business needs, and whether, by virtue of stock ownership or otherwise, one corporation effectively controls another."  *Id.*; *see also Gerling International*

---

[20] *See* Brief in Opposition to Motion to Quash 9.

*Insurance Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 141 (3rd Cir. 1988) ("Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party."); *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 09-599, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010) (finding "control" based on the "practical ability to obtain the material sought on demand") (citing *In re Wright*, No. 04–94519–WHD, 2005 WL 6488101 at *3 (Bankr. N.D. Ga. Aug. 9, 2005)); *Securities and Exchange Commission v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 473 (S.D.N.Y. 2000) ("control" found where the alter ego doctrine warranted piercing the corporate veil); *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Companies, Inc.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983) ("control" found where litigating corporation acted as the agent of a sister corporation in transaction giving rise to suit and was litigating on behalf of the sister corporation).

Deposition topics "1" through "6" all seek information directly related to whether Mercedes has "control" of responsive documents possessed by Daimler AG. While Corea has already produced evidence of a parent-subsidiary corporate

relationship,[21] topics "1" and "2," concerning the "ownership of [Mercedes]" and the "general corporate structure of [Mercedes]" seek to definitively establish that the relationship exists.[22]  Topics "3" through "5," concerning the relationship between Mercedes and Daimler AG, are relevant to the issues of whether the alter ego doctrine would permit piercing the corporate veil, and whether one corporation effectively controls another.  Topics "3" and "6," concerning the exchange of "information, documents, and things" between Mercedes and Daimler AG, are relevant to whether Mercedes had the practical ability to obtain documents from Daimler AG on demand.

If Corea can show that Mercedes has control of responsive documents possessed by Daimler AG, Corea can then compel Mercedes to produce those documents.  Thus, because deposition topics "1" through "6" all seek information relevant to the issue of control, those topics are all "reasonably calculated to lead to the discovery of admissible evidence," and they are within the permissible scope of discovery.

## 2.    Information concerning windshield wiper blades (deposition topics "7" through "15")

Mercedes does not dispute that deposition topics "7" through "15" all seek

---

[21] *See* doc. no. 4-7 (Daimler:  Statement of Investments) 8 (listing Daimler AG as owning a "100.00%" capital share of "Mercedes-Benz U.S. International, Inc.").

[22] Subpoena 3 (bracketed alterations supplied).

information relevant to the patent invalidity defense asserted by Corea in the underlying patent infringement litigation.  Rather, Mercedes argues that the first subpoena issued to it requested that it produce documents on essentially the same topics as those on which Corea now seeks to depose a corporate representative of Mercedes.[23]  Mercedes then asserts that, because it has already produced all responsive documents, the deposition would not lead to the discovery of relevant information.[24]

The argument put forth by Mercedes is ill-founded.  The fact that Mercedes has produced all responsive documents in its possession does not mean that the officers and employees of Mercedes do not possess knowledge of these topics independent of the documents.  A corporation "knows" more than just the contents of the documents in its possession.  Corporations are run by people, people have the capacity of memory, and Corea is entitled to inquire into this collective memory in order to elicit relevant information.  *See, e.g.*, *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006) ([I]f a certain fact is within the *collective knowledge* or subjective belief of [the corporation], [the corporate representative] should be prepared [to testify on that issue].") (emphasis and bracketed alterations

---

[23] Brief in Support of Motion to Quash 5-6.

[24] *Id.*

12

supplied).

**B.   Undue Burden**

Mercedes also objects to the subpoena on the grounds that it subjects Mercedes to an undue burden.[25]  Rule 45 provides that on a timely motion, a court "must quash or modify a subpoena" in certain circumstances, one of which is when the subpoena "subjects a person to undue burden."  To determine whether a subpoena imposes an undue burden a court must weigh the need for, and benefits of, the subpoena against the burdens it imposes on the responding party. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); 9A *Federal Practice and Procedure* § 2463.  Factors to consider in weighing the benefits and burdens include the relevance of the information sought, the need of the requesting party for the information, the breadth of the request, alternative sources of the information, the expense and inconvenience of compliance, and the status of the responding person or entity as a party or a non-party.  *See Cytodyne Technologies*, 216 F.R.D. at 535; 9A *Federal Practice and Procedure* § 2463.  The burden to establish that the subpoena imposes an undue burden rests on the person or entity seeking the motion to quash. *See*, *e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir.1984).

---

[25] *See id.* at 6-9.

As discussed above, the affirmative defense of patent invalidity that Corea asserts in the underlying patent infringement litigation hinges on Corea producing evidence that the "Beam Wiper Blades" at issue were "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(a).  For this reason, the information Corea seeks concerning any use of the "Beam Wiper Blades" in the United States prior to the patent application dates is highly relevant, and Corea has a strong need for this information.

Mercedes argues that the subpoena is overbroad because it is "not limited in time, scope, or subject matter."[26]  Most of the deposition topics contain inherent time, scope, and subject matter limitations.  Topics "7," "11," "12," and "15" are limited to information about "Beam Wiper Blades" prior to "November 16, 2000."[27]  Topics "8," "9," and "10" are all limited to "model year 1999, 2000, and/or 2001 Mercedes Benz CL and S class vehicles."[28]  Topic "13" is limited to "model year 2000 Mercedes Benz CL and S class vehicle[s]."[29]  Topic "14" seeks specific, numbered "engineering drawings of Beam Wiper Blades."[30]

---

[26] *Id.* at 7.

[27] Subpoena 4-5.

[28] *Id.* at 4.

[29] *Id.* at 5 (bracketed alteration supplied).

[30] *Id.*

14

Topics "1" through "6," concerning the relationship between Mercedes and Daimler AG, are all limited in scope and subject matter, but contain no time limitations. However, this deficiency can be alleviated by modifying the subpoena to place a time period limitation on those deposition topics. As discussed above, topics "1" through "6" are relevant and necessary only for the purpose of determining whether Mercedes, from the time Corea served Mercedes with the first subpoena to the present, had control over responsive documents in the possession of Daimler AG. Thus, these topics are only relevant over the relatively recent past, and the court will modify the subpoena to limit the deposition topics numbered "1" through "6" to January 1, 2007, to the present.

Mercedes also argues that "the requested information can be obtained from less burdensome sources."[31] Specifically, Mercedes suggests that topics "7" and "15," regarding interactions between Mercedes and Bosch concerning "Beam Wiper Blades," can be more easily obtained from Bosch.[32] However, Corea has shown that the information cannot be more easily obtained from Bosch because Corea already attempted, but was unable, to obtain that information from Bosch through discovery

---

[31] Brief in Support of Motion to Quash 8.

[32] *Id.* at 9.

in the underlying patent infringement litigation.[33]

Mercedes also suggests that topics "8," "9," "10," and "13," which request information about the importation, display, use, and vehicle identification numbers of model year 1999, 2000, and 2001 Mercedes CL and S class vehicles, can be more easily obtained from "documents reflecting these facts."[34] However, some responsive information known by the officers and employees of Mercedes may not have been memorialized in a document, and can only be obtained by deposing a corporate representative.

Mercedes does not specifically object to the cost or inconvenience of presenting a corporate representative to be deposed. Additionally, Corea has demonstrated that the deposition likely would impose minimal costs and inconvenience on Mercedes. Corea deposed the corporate representative of Mercedes-Benz USA, a sister corporation of Mercedes, in less than two hours, and Corea has offered to conduct the deposition of a corporate representative of Mercedes in any location that is convenient to Mercedes.[35]

After weighing all of the relevant factors and imposing a time limitation on

[33] *See* doc. no. 4-3 (First Request for the Production of Documents to Bosch); doc. no. 4-4 (Third Request for the Production of Documents to Bosch); doc. no. 4-5 (Fourth Request for the Production of Documents to Bosch).

[34] Brief in Support of Motion to Quash 9.

[35] Brief in Opposition to Motion to Quash 14.

16

topics "1" through "6," the court must find that the subpoena does not unduly burden Mercedes.

## C. "General Objections"

Mercedes also submits eleven "general objections" to the subpoena.[36]  First, Mercedes asserts that "the Subpoena fails to allow a reasonable time to comply."[37] However, due to the motion to quash now before the court, the scheduled date for the deposition has passed and a new date will need to be set.  Without a date on which the deposition will occur, the court cannot find that the subpoena fails to allow a reasonable time to comply.

Second, Mercedes objects that the definitions of "Mercedes-Benz U.S. International, Inc.," "Bosch," and "Daimler AG" are "vague, ambiguous, overbroad, and unduly burdensome"[38] because the subpoena defines each as including "any parents, related companies, affiliates, merged or acquired predecessors, owners, directors, partners, officers, shareholders, employees, successors, insurers, assigns, agents, or counsel, and any representatives or persons that at any time have acted, purported to act, or were authorized to act on behalf of" the entity.[39]  Rule 30(b)(6)

---

[36] *See id.* at 10-17.

[37] *Id.* at 10.

[38] *Id.*

[39] Subpoena at 2-3.

makes clear that the representative of Mercedes only "must testify about information known or reasonably available to" Mercedes.  As discussed above, any information concerning the importation of prior art wiper blades prior to the patent application dates is highly relevant, and Corea has a strong need for this information.  Limiting the deposition through overly narrow definitions would needlessly hamper the discovery process.  Mercedes only must inquire of its agents as to their relevant knowledge, and testify as to that knowledge.  Thus, the topics are not overbroad or unduly burdensome.  The definitions are also clear on their face and, thus, are not vague or ambiguous.

Third, Mercedes objects to the subpoena "to the extent that" it:

- "imposes obligations . . . greater than those required under the Federal Rules of Civil Procedure";[40]

- "seek[s] testimony on matters not within . . . the knowledge [of Mercedes]";[41]

- "seek[s] information that is confidential, proprietary and/or constitutes business or trade secrets";[42]

- "would require disclosure of non-public, personal information of third-parties without their consent";[43]

---

[40] Brief in Support of Motion to Quash 10, ¶ 2.

[41] *Id.* at 10, ¶ 6 (bracketed alteration supplied).

[42] *Id.* at 11, ¶ 9 (bracketed alteration supplied).

[43] *Id.* at 11, ¶ 10.

- "seek[s] information that is subject to a confidentiality agreement with a third party or a court-ordered confidentiality agreement";[44] and,

- "seeks or could be construed to seek the production of privileged and/or immune information, including without limitation information subject to and/or protected from disclosure pursuant to the attorney-client privilege, the attorney work product doctrine, or any other recognized doctrine or privilege."[45]

Mercedes has not presented any argument or factual support to show that the subpoena actually raises these issues. Therefore, these objections are without merit.

Finally, Mercedes objects to the deposition topics on the grounds that they:

- "are vague, ambiguous, and not reasonably limited in time, scope, or subject matter";[46]

- "seek information that is immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence";[47] and,

- "are oppressive, overbroad and unduly burdensome."[48]

These objections are the same relevance and unduly burdensome arguments discussed and denied above.

---

[44] *Id* (bracketed alteration supplied).

[45] Brief in Opposition to Motion to Quash 11-12, ¶ 11.

[46] *Id.* at 11, ¶ 7.

[47] *Id.*

[48] *Id.* at 11, ¶ 8.

D.    "Specific Objections"

Mercedes also asserts "specific objections" to each of the fifteen deposition topics.  These objections, with the following exceptions, simply restate the relevance and unduly burdensome objections discussed and denied above.[49]

Mercedes objects to deposition topics "7," "11," "12," and "14" "to the extent that" they seek information protected by privilege, "confidential and/or proprietary in nature," or "non-public information of third-parties without their consent."[50] Mercedes has failed to show that any information sought is privileged, confidential, proprietary, or private information of third-parties.   Moreover, if Corea seeks information of this nature during the deposition, the representative of Mercedes may refuse to disclose information protected from disclosure by law.

Mercedes objects to deposition topics "8," "9," "10," and "13" on the grounds that it "did not manufacture CL and S class vehicles during the time period set forth in this Topic and, thus, does not have corporate knowledge of this Topic."[51]  Again, Rule 30(b)(6) provides that a corporate representative only must testify "about information known or reasonably available to" the corporation.  If Mercedes has no knowledge of these topics, the corporate representative may so state, but the

---

[49]*See id.* at 12-17.

[50] Brief in Opposition to Motion to Quash 13-16.

[51] *Id.* at 14-16.

representative still must appear and be deposed.

## III.  CONCLUSION AND ORDER

The motion to quash and for a protective order is due to be, and hereby is,

GRANTED IN PART and DENIED IN PART.  The deposition topics numbered "1"

through "6" shall be limited to the time period between January 1, 2007 and the

present date.  Mercedes shall designate one or more corporate representatives to be

deposed, and that representative shall appear for a deposition to be conducted by

Corea on a date, and at a place, designated by Corea.  Costs are taxed to the parties

which incurred them.  The Clerk is directed to close this file.

DONE and ORDERED this 6th day of February, 2012.

_____

United States District Judge

21